

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MILTON FRANCISCO SOZA
VELASQUEZ and ALBIN ADOLFO
ASTURIAS ESTURBAN,

                                   Petitioners,

v.

CHRISTOPHER LAROSE, Warden of
the Otay Mesa Detention Center, et al.,

                                   Respondents.

Case No.:  25-CV-3137 JLS (MSB)

**ORDER GRANTING IN PART AND
DENYING IN PART PETITION
FOR WRIT OF HABEAS CORPUS**

(ECF No. 1)

Presently before the Court is Petitioners Milton Francisco Soza Velasquez's and Albin Adolfo Asturias Esturban's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 1).  Also before the Court is Respondents Christopher LaRose's (Senior Warden, Otay Mesa Detention Center), Gregory Archambeult's (Director of the San Diego Field Office, United States Immigration and Customs Enforcement), Pamela Bondi's (U.S. Attorney General), Kristi Noem's (Secretary, U.S. Department of Homeland Security), and Todd Lyons's (Acting Director, U.S. Immigration and Customs Enforcement) (collectively, "Respondents") Return to Habeas Petition ("Ret.," ECF No. 6)

and Petitioners' Traverse ("Traverse," ECF No. 8).[1]  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Petitioners' Petition for Writ of Habeas Corpus.

## BACKGROUND

Petitioner Velasquez, a Nicaraguan national and citizen, entered the United States without inspection or parole in October of 2022.  Pet. ¶ 15.  Valasquez was released from DHS custody on humanitarian parole, which is now expired.[2]  Ret. at 2 Ex. 2.  Velasquez "complied with all conditions of his release, including appearing timely for each scheduled ICE check-in."  *Id.* ¶ 24.  On November 6, 2025, Velasquez appeared at his "regularly scheduled ICE check-in" where he was "arrested without a warrant or a notice or finding of violation of any condition of release."  *Id.* ¶ 25.  Since then, he has been detained by the United States Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") division at the Otay Mesa Detention Center.  *Id.* ¶ 30.  Petitioner Velasquez claims that he is detained by ICE in violation of the Due Process Clause of the Fifth Amendment, 8 U.S.C. § 1226(a), Administrative Procedure Act, and 8 U.S.C. § 1357(a)(2).  *Id.* ¶¶ 67–117.

Petitioner Esturban, a Guatemalan national and citizen, entered the United States on or around August 7, 2022, without inspection.  *Id.* ¶ 27.  On October 20, 2025, Esturban was arrested during a "roving checkpoint stop without a warrant and/or probable cause."  *Id.* ¶ 29.  Since his arrest, Esturban has been detained by DHS's ICE division at the Otay Mesa Detention Center.  *Id.* ¶ 30. Petitioner Esturban claims that he is detained by ICE in

---

[1] Petitioners filed both a Reply in Support of Request for Temporary Restraining Order ("Reply," ECF No. 7) and a Traverse. *See generally* Docket. For purposes of simplicity, and because the two are almost identical, the Court will only refer to the Traverse.

[2] Neither Petitioners nor Respondents have included the documentation of Velasquez's humanitarian parole demonstrating the expiration date. However, Petitioners state in their Traverse that "[t]he facts in this case are not in dispute," and "Petitioners do not dispute the factual allegations contained in the exhibits submitted by Respondents." Traverse at 1. Therefore, the Court accepts as true the fact that Velasquez's parole was expired at the time of his detainment on November 6, 2025.

25-CV-3137 JLS (MSB)

violation of the Due Process Clause of the Fifth Amendment, Fourth Amendment, 8 U.S.C. § 1226, and 8 U.S.C. § 1357(a)(2).  *Id.*  ¶¶ 67–117.

Both Petitioners are currently in removal proceedings under 8 U.S.C. § 1229(a) and are each charged with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i)[3] and 8 U.S.C. § 1182(a)(7)(A)(i)(I).[4]

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241.  *See* 28 U.S.C. § 2241(a).  The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals.  *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)).  However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court.  *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

Respondents argue that this Court lacks jurisdiction under 8 U.S.C. § 1225(g) and § 1225(b)(9) and that Petitioners have failed to exhaust their administrative remedies.  Ret. at 8–12.  Respondents then argue, if the Court finds jurisdiction and waives exhaustion,

---

[3] 8 U.S.C. § 1182(a)(6)(A)(i) designates as inadmissible, and therefore "ineligible to receive visas and ineligible to be admitted to the United States," illegal entrants who are present "without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General."

[4] 8 U.S.C. § 1182(a)(7)(A)(i)(I) designates as inadmissible entrants who are not in possession of a valid entry document.

that Petitioners' claims fail on the merits because the Petitioners are subject to mandatory detention under 8 U.S.C. § 1225.  *Id.* at 12–17.

## I.     Jurisdiction

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  8 U.S.C. § 1252(g).  Respondents claim that Petitioners' claims "necessarily arise from the decision or action by the Attorney General to commence proceedings and adjudicate cases."  Ret. at 9 (simplified).  The Court disagrees.

Section 1252(g) should be read "narrowly" as to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"  *Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *6 (9th Cir. Aug. 27, 2025) (quoting *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482, 487 (1999)).  Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders."  *Id.* at *7.  Section 1252(g) does not bar due process claims.  *Walters v. Reno*, 145 F.3d 1032, 1052–53 (9th Cir. 1998) (finding that the petitioners' objective was not to review the merits of their proceeding, but rather "to enforce their constitutional rights to due process in the context of those proceedings").

Here, Petitioners do not challenge the decision to commence removal proceedings or any act to adjudicate or execute a removal order.  Pet ¶ 4.  Rather, Petitioners are challenging the legality of DHS's misclassification of custody under § 1225(b), which deprived them of their statutory right to a bond hearing under § 1226(a).  *Id.* at ¶¶ 49–50.  Petitioners are enforcing their "constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order."  *Garcia v. Noem*, No. 25-CV-2180-DMS-MMP, 2025 WL 2549431, at *4 (S.D. Cal. Sept. 3, 2025).  Therefore, § 1252(g) does not strip the Court of jurisdiction.

Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien from the United States* under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9) (emphasis added). Respondents argue that Petitioners are challenging "the government's decision and action to detain them" during removal proceedings. Ret. at 11. Respondents assert that the decision to detain Petitioners arise from the "decision to commence removal proceedings" and thus is "an action taken . . . to remove [them] from the United States." *Id.* (quoting 8 U.S.C. § 1252(b)(9)). Respondents conclude that the Court lacks jurisdiction under § 1252(b)(9). *Id.* Again, the Court disagrees.

Section 1252(b)(9) "has built-in limits, specifically, claims that are independent of or collateral to the removal process do not fall within the scope" of § 1252(b)(9). *Gonzalez v. United States Immigration and Customs Enforcement*, 975 F.3d 788, 810 (9th Cir. 2020) (citing *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016) (internal quotation marks omitted). "[C]laims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process." *Id.*; *see also Garcia*, 2025 WL 2549431, at *3–4; *Nielson v. Preap*, 586 U.S. 392, 402 (2019) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018)) (finding § 1252(b)(9) did not strip the court of jurisdiction because the petitioners were "not asking for review of an order of removal; they [were] not challenging the decision to detain them in the first place or to seek removal (as opposed to decision to deny them bond hearings); and they [were] not even challenging any part of the process by which their removability w[ould] be determined").

Here, as discussed above, Petitioners are not challenging the Department of Homeland Security's decision to commence removal proceedings, to adjudicate removability, or to exercise its general discretion to detain. *See* Traverse at 5. Petitioners are instead challenging the "legality of their respective detention" and their alleged

misclassification depriving them of a bond hearing. *Id.* at 6–10. Therefore, § 1252(b)(9) also does not strip the Court of jurisdiction.[5]

## II. Exhaustion

"Exhaustion can be either statutorily or judicially required." *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). While 28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus," the Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by*, *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Prudential exhaustion may be required if: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (citing *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). "[A] court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

The Court, following other courts in this District, finds that exhaustion would be futile because the Board of Immigration Appeals is obligated to apply the binding precedent of *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) to find that

---

[5] Respondents further argue that the Court does not have jurisdiction to review Esturban's Fourth Amendment claim because "allegations of constitutional violations in removal cases 'belong in front of an Immigration Judge, not a federal district court.'" Ret. at 11 n.2 (quoting *Marvan v. Slaughter*, No. CV 25-49-H-DLC, 2025 WL 1940043, at *3 (D. Mont. July 15, 2025)). Again, the Court disagrees for the same reasons discussed above. *See Perdomo v. Noem*, 790 F. Supp. 3d 850, 884–85 (C.D. Cal. 2025) (finding jurisdiction to evaluate a Fourth Amendment claim).

detention is mandatory under 8 U.S.C. § 1225(b)(2).  *See, e.g.*, *Garcia*, 2025 WL 2549431, at *4–5; *Valdovinos v. Noem*, No. 25-CV-2439 TWR (KSC), slip op. at 9 (S.D. Cal. Sept. 25, 2025).  Therefore, the Court concludes that exhausting administrative remedies would be futile.

## III.  Merits

### A.  Fourth Amendment

Petitioner Esturban contends that his October 20, 2025, arrest during a "roving checkpoint stop without a warrant and/or probable cause" violated his Fourth Amendment rights.  Pet. ¶ 29.  Esturban asserts that the "Border Patrol officer who initially stopped [him] . . . did not have a reasonable suspicion to engage in a detentive stop."  *Id.*  Esturban contends that he was "unarmed, not engaged in criminal or suspicious activities, nor did he attempt[] to flee or resist arrest."  *Id.*  Esturban was instead "targeted and arrested solely on account of his Latino appearance and inability to respond to questions in English."  *Id.*

In their Return, Respondents contend that Esturban cannot base his request for release from detention on Fourth Amendment violations because the Court lacks jurisdiction to hear such claims.  Ret. at 11 n.2.  Respondent does not otherwise challenge Esturban's assertion that ICE arrested him without a warrant or probable cause.  *See generally* Ret.

As discussed, contrary to what Respondents claim, the Court has jurisdiction to hear Esturban's claims.  *See* Traverse at 3–7 (collecting cases).  However, Esturban does not explain why release is the remedy for the alleged Fourth Amendment violations.  *Cf. United States v. Crews*, 445 U.S. 463, 474 (1980) (noting, in the criminal context, that the Fourth Amendment's "exclusionary principle" "delimits what proof the Government may offer against the accused at trial, closing the courtroom door to evidence secured by official lawlessness," but an individual "is not himself a suppressible 'fruit'"); *Cruz v. Barr*, 926 F.3d 1128, 1146 (9th Cir. 2019) (releasing petitioner on Fourth Amendment grounds because fruits of the regulatory violation were the only evidence of petitioner's alienage).

Therefore, Esturban has not met his burden in proving that release is warranted on Fourth Amendment grounds.

### B. Detention Under § 1225(b)

Respondents argue that the Petitioners are subject to mandatory detention under § 1225(b)(2)(A) as applicants for admission. Ret. at 12–17. Petitioners argue that they have been unlawfully subject to the mandatory detention provision under § 1225(b)(2), which applies only to applicants for admission encountered at or near the border and not to individuals like the Petitioners, "who are long-time residents of the United States" and never sought admission.[6] Traverse at 7–9. Petitioners allege that they are entitled to an individualized bond hearing under § 1226(a), and that their mandatory detention "is a radical departure from decades-long practice." Pet. ¶ 97.

Section 1225 applies to "applicants for admission" who are "alien[s] present in the United States who [have] not been admitted or who arrive[] in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). Section 1225(b)(2)(A) provides in part that "an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly beyond a doubt entitled to be admitted, . . . shall be detained for a proceeding under [§ 1229a]." *Id.* § 1225(b)(2)(A).

Section 1226(a) applies to a noncitizen who is "detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Section 1226 provides, so as long as the detained noncitizen is not covered by § 1226(c), that

---

[6] Regarding Petitioner Velasquez, Petitioners also argue that Velasquez's parole cannot be revoked without notice or an opportunity to be heard. Pet. ¶ 58. The Court agrees that if Velasquez was released on humanitarian parole, and that parole was revoked without notice or justification, that Velasquez could be entitled to release on due process grounds. *See, e.g.*, *Salazar v. Casey*, No. 25-cv-2784 JLS (VET), 2025 WL 3063629 (S.D. Cal. Nov. 3, 2025). However, Respondents state, and Petitioners do not dispute, that Velasquez's humanitarian parole had expired at the time of his arrest. Ret at 2. Petitioners do not address the effect of the expiration of Valasquez's parole on the due process analysis, and the Court is not persuaded that expired parole can be treated the same as a valid grant of parole. Therefore, the Court finds that Velasquez cannot be released on these grounds.

pending such decision, the Attorney General may release the noncitizen on bond. *See Jennings*, 583 U.S. at 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention."). Section 1226(c) requires mandatory detention for noncitizens who have been charged with certain crimes listed in § 1182(a) and § 1227(a). § 1226(c)(1). Notably, § 1226(c)(1)(E) (enacted by the Laken Riley Act) requires mandatory detention for noncitizens who are (1) inadmissible under §1182(a)(6)(A), (6)(C), or (7); *and* (2) charged with certain crimes.[7] § 1226(c)(1)(E). "A plain reading of this exception implies that the default discretionary bond procedures in Section 1226(a) apply to a noncitizen who . . . is present without being admitted or paroled but *has not been* implicated in any crimes as set forth in Section 1226(c)." *Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *17 (W.D. Wash. Sept. 30, 2025).

Here, Petitioners are currently subject to mandatory detention at the Otay Mesa Detention Center pursuant to § 1225(b)(2). Pet. ¶ 1. If the Court determines that Petitioners are held pursuant to § 1226 and not § 1225(b)(2), Petitioners would be entitled to bond hearings in front of an immigration judge.

The Court follows other decisions in this Circuit finding that "seeking admission requires an affirmative act such as entering the United States or applying for status, and that it does not apply to individuals who, like [the Petitioners], have been residing in the United States and did not apply for admission or a change of status." *Mosqueda v. Noem*, No. 25-CV-2304 CAS (BFM), 2025 WL 2591530, at *5 (C.D. Cal. Sept. 8, 2025); *see, e.g.*, *Vazquez v. Feeley*, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082, at *11–16 (D. Nev. Sept. 17, 2025); *Rodriguez*, 2025 WL 2782499, at *1 ("Every district court to address this question has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency

---

[7] These crimes are "burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." § 1226(c)(1)(E)(ii).

practice."); *Guzman v. Andrews*, No. 25-CV-1015-KES-SKO (HC), 2025 WL 2617256, at *4–5 (E.D. Cal. Sept. 9, 2025) (finding that petitioner who was released on bond and rearrested was entitled to a bond hearing under § 1226); *Garcia*, 2025 WL 2549431, at *8 (providing petitioner with an individualized bond hearing under § 1226(a)); *Valdovinos*, No. 25-CV-2439 TWR (KSC), slip op. at 9 (same).

Petitioners were not encountered at a port of entry, during inspection, or near the international boundary. Traverse at 7–10. Petitioners were arrested in the interior of the United States by ICE Officers, not while presenting themselves at the gate of entry to attempt to apply for admission. *Id.* Petitioners have also not taken any affirmative acts to seek admission but rather have been residing in the United States for several years. *Id.*; *see also Kadir v. Larose*, No. 25-CV-1045 LL (MMP), 2025 WL 2932654, at *2–3 (S.D. Cal. Oct. 15, 2025) (finding that when petitioner scheduled an appointment for admission at the border that clearly qualified him as an applicant for admission under § 1225(b)).

Therefore, the Court concludes that Petitioners are not applicants for admission under §1225(b) and are entitled a bond hearing under §1226(a).

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** Petitioners' Petition for Writ of Habeas Corpus (ECF No. 1), and **ORDERS** Respondents to provide Petitioners with individualized bond hearings under 8 U.S.C. § 1226(a) within <u>fourteen (14) days</u>. Respondents **SHALL NOT** deny Petitioners' bond on the basis that 8 U.S.C. § 1225(b)(2) requires mandatory detention. The Court **DENIES IN PART** the Petition to the extent that Petitioners request to be released from custody and **DENIES AS MOOT** any request for a Temporary Restraining Order. As this concludes the litigation in this matter, the Clerk of Court **SHALL** close the file.

**IT IS SO ORDERED.**

Dated: November 21, 2025

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge